DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JEFFREY SAVOIA,**
Appellant,

v.

**FITNESS INTERNATIONAL, LLC,** d/b/a **LA FITNESS** and **JOAN VENTO,**
Appellees.

No. 4D19-368

[December 18, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. 17-3255 CACE (09).

John H. Pelzer and Neal W. Hirschfeld of Greenspoon Marder LLP, Fort Lauderdale, and Steven M. Singer of Law Offices of Steven M. Singer, P.A., Plantation, for appellant.

Masha Ciampittiello and Michael W. LeRoy of Fulmer LeRoy & Albee, PLLC, Orlando, for appellees.

CIKLIN, J.

Jeffrey Savoia appeals a final summary judgment entered in favor of Fitness International, LLC, d/b/a LA Fitness, and Joan Vento (the "gym") in a personal injury action. Savoia contends that the trial court erred in entering summary judgment because issues of material fact remained pertaining to whether he was prevented from reading a comprehensive exculpatory clause contained in his contract with the gym. We agree and reverse.

Savoia slipped and fell in the gym's bathroom and subsequently sued the gym for damages. The gym moved for summary judgment, arguing that when signing up for membership, Savoia signed a contract with an exculpatory clause that waived any such claims.

The contract was an electronic membership agreement, which was presented to him on a computer tablet. Savoia was not shown a printed

contract. In the version of the contract that was printed and placed in the record below, the contract is three pages, and the bottom of the first page indicates that it is "Page 1 of 3." Savoia's signature appears on the bottom of the first page and the exculpatory clause is in a box on the second page. There is no mention of the exculpatory clause on the first page of the contract.

At his deposition, Savoia described the contract language as being mostly obscured by a "pop-up" space for his signature. He further testified as follows:

> Q. So you just signed away without knowing, did they tell you what was in there?
>
> A. They just said to me these are your payments, amounts, this is when your start date is. We had gone in with like four of us had done it, and I was after the fact, like, we all went there, they went there, and I came later on and signed the little tablet for them at a later date.
>
> . . . .
>
> Q. Did you scroll up and down on the tablet?
>
> A. No. He just told me sign it. This is your membership, and I said, okay. So I signed it. I was thinking that my friends already read the stuff, so I didn't have to worry about it.
>
> . . . .
>
> I just thought it was a basic contract.
>
> . . . .
>
> I didn't know it was so deep.
>
> Q. What do you mean by basic contract? You understood it was a contract?
>
> A. Yeah, you sign a contract that you owe the money, but I didn't think about everything else.

He also testified that if he had been offered a copy of the contract, he would have read it.

2

In opposition to summary judgment, Savoia argued that to exclude his claim, his waiver would have to be knowing and unequivocal. He contended that he never saw the exculpatory clause or even pages two and three of the contract. He pointed to material issues of fact as to what came up on the computer screen, whether he was shown the release language, and whether the release language was blocked by a pop-up signature block, among others.

Savoia's affidavit and argument notwithstanding, the trial court entered summary judgment in "a final order" that discussed the breadth and wording of the exculpatory clause, but that did not address the material and unresolved issues of fact raised by Savoia.

On appeal, Savoia contends that a party is not bound by a signed contract if portions of the contract were concealed from him or if he was dissuaded from reading the contract. He argues that both of these exceptions apply because pages two and three of the contract were concealed on the small computer pad and the gym employee indicated that the contract concerned only his ongoing financial obligation for his gym membership. We agree and reverse.

An order granting summary judgment is reviewed de novo. *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). "When reviewing a ruling on summary judgment, an appellate court must examine the record in the light most favorable to the non-moving party; the burden is upon the moving party to show conclusively the complete absence of any genuine issue of material fact." *Harvey v. Deutsche Bank Nat'l Tr. Co.*, 69 So. 3d 300, 303 (Fla. 4th DCA 2011).

"Florida adheres to the principle that a 'party has a duty to learn and know the contents of a proposed contract before he signs' it." *Wexler v. Rich*, 80 So. 3d 1097, 1100-01 (Fla. 4th DCA 2012) (quoting *Mfrs.' Leasing, Ltd. v. Fla. Dev. & Attractions, Inc.*, 330 So. 2d 171, 172 (Fla. 4th DCA 1976)). "Therefore, '[o]ne who signs a contract is presumed to know its contents.'" *Id.* at 1101 (alteration in original) (quoting *Addison v. Carballosa*, 48 So. 3d 951, 954 (Fla. 3d DCA 2010)). "A party to a written contract cannot defend against its enforcement on the ground that he signed it without reading it . . . ." *All Fla. Sur. Co. v. Coker*, 88 So. 2d 508, 510 (Fla. 1956) (citation omitted).

However, there are two exceptions to this rule. A party can defend against enforcement of a contract where "he aver[s] facts showing circumstances which prevented his reading the paper" or where he "was

induced by the statements of the other parties to desist from reading it." *Id.* (citation omitted); *see also Allied Van Lines, Inc. v. Bratton*, 351 So. 2d 344, 347-48 (Fla. 1977) (explaining that a contract is binding "[u]nless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract").

The case of *Parham v. East Bay Raceway*, 442 So. 2d 399 (Fla. 2d DCA 1983), another personal injury case involving a release, is instructive. Parham's accident occurred in the pit area at the East Bay Raceway. *Id.* at 399-400. Prior to entering the Raceway, Parham signed an agreement releasing the Raceway from all liability. *Id.* at 400.

Prior to entering the pit area, an employee advised Parham that he must pay a dollar for "insurance," sign his name on a form for "insurance," and get his hand stamped. *Id.* The form was attached to a clipboard:

> The upper half of this form consisted of language releasing the Raceway from all liability in the event of an injury to a signatory in any restricted area. The lower half contained signature lines, some of which had been filled in. The only portion of this form visible to Parham at the time was the lower half; the upper half was covered by a form of the same size which had been folded in half. (It was learned after the accident that this folded form was an identical release form which had already been filled with signatures.) Upon being shown by the employee where to sign, Parham affixed his signature on a signature line and had his hand stamped.

*Id.* Parham was then struck and injured by a race car and sued. *Id.*

Based on the release, the trial court granted summary judgment in favor of the Raceway and its insurer. *Id.*

On appeal, the Second District reversed. *Id.* at 399. The court disagreed with the contention of the Raceway that the issue was purely legal, whether one can avoid a contract based on a contention that he did not read before signing despite having the opportunity to do so. *Id.* at 400. Instead, it recognized that whether fraud existed in obtaining an instrument is a question of fact for the jury, and concluded:

> [A] genuine issue of material fact exists for the jury as to whether the Raceway employee at the ticket shack leading to the restricted areas misrepresented to Parham that the

4

contents of the release agreement concerned the matter of "insurance" and/or concealed the contents of the agreement from him. If the jury finds that the employee committed either or both of these acts, a genuine issue of material fact will remain as to whether one or both of these actions dissuaded or prevented Parham from exercising his opportunity to read the release form before signing it. If the jury finds that Parham was dissuaded or prevented from doing so, the agreement is voidable. The negligence issue will then need to be addressed and resolved.

*Id.* at 401.

Here, like the folded contract in *Parham*, in the light most favorable to Savoia, there is and remains a question of fact as to whether the presentation of the release on the computer tablet "prevented his reading the paper." The record on review does not include a picture of the tablet or screen on which the contract was presented, nor is there a rendering in the record showing what the contract actually looked like when it was presented to Savoia on the computer tablet. It is unclear if a scroll bar or arrows on the screen indicated that there was more text below the place where Savoia signed, or if Savoia was able to see the indication that he was viewing "Page 1 of 3." The undeveloped record does not reveal whether the electronic presentation of the contract "prevented his reading the" contract, and thus, this remains a genuine issue of fact.

Likewise, the question remains as to whether Savoia "was induced by the statements of the other parties to desist from reading it." *See Coker*, 88 So. 2d at 510. According to Savoia, the LA Fitness employee stated that the contract consisted of "payments, amounts, . . . [and] start date" and told him to sign. This is comparable to the statement by the employee in *Parham* that he must sign for "insurance." Thus, despite knowing that some of the text was blocked, believing the contract consisted only of financial terms, Savoia may have been induced into not reading further by the employee. Based on the state of the record, this appears to clearly be a question of fact for jury resolution.

One could argue that Savoia was not prevented from reading the contract, but rather chose not to read the contract, since he testified, "I was thinking that my friends already read the stuff, so I didn't have to worry about it," or that he chose to sign despite knowing that there was language obscured by the pop-up. "However, the mere existence of an opportunity for a party to know the contents of a proposed contract is not sufficient by itself to infer constructive notice where the party justifiably

5

relies to his detriment upon a misrepresentation by the other party about the nature of the proposed contract." *Parham*, 442 So. 2d at 401. We are compelled to look at the facts in the light most favorable to Savoia, and in that light, it is unclear whether he would have chosen to sign if he knew that there was more to the contract than mere payment information and membership dates.

Whether or not Savoia ultimately prevails following a trial is of no import at this stage of the proceedings. Because several genuine issues of material fact remain, the trial court erred in entering summary judgment. We therefore reverse and remand for further proceedings.

*Reversed and remanded.*

FORST, J., concurs.
GERBER, J., dissents with opinion.

GERBER, J., dissenting.

I respectfully dissent. The record reflects no genuine issue of material fact that the plaintiff chose not to read the contract, not that the gym prevented or dissuaded him from reading the contract. At the plaintiff's deposition, he candidly testified, "I was thinking that my friends already read the stuff, so I didn't have to worry about it."

The plaintiff's after-the-fact testimony that if he had been offered a copy of the contract, he would have read it, is belied by the record. He was offered the contract on the tablet. He did not scroll up and down on the tablet. He simply chose not to read the contract because, again, he "was thinking that my friends already read the stuff, so I didn't have to worry about it."

Although the plaintiff later claimed that the "pop-up" signature space mostly obscured the contract's language, and that the gym's agent misrepresented the contract simply as "your payments, amounts, this is when your start date is . . . [t]his is your membership," the plaintiff did not testify that either of those facts was the reason why he did not read the contract. Again, the plaintiff testified that the reason why he did not read the contract was because he "was thinking that my friends already read the stuff, so I didn't have to worry about it."

In fact, the plaintiff's testimony that he "was thinking my friends already read the stuff, so I didn't have to worry about it" belies the plaintiff's testimony that the "pop-up" signature space obscured the

6

contract's language. If his friends were able to "read the stuff," then presumably he understood that he could have "read the stuff." He simply chose not to.

*Parham v. East Bay Raceway*, 442 So. 2d 399 (Fla. 2d DCA 1983), is distinguishable. Unlike *Parham*, this is not a case where the plaintiff testified that he chose not to read the contract because the contract's language was obscured or because he was relying upon an agent's representation about the contract's contents. Instead, the plaintiff testified that he chose not to read the contract because he was relying on his friends - "I was thinking that my friends already read the stuff, so I didn't have to worry about it."

In sum, the plaintiff's choice not to read the contract is where this case began, and where this case should end. The circuit court properly entered summary judgment. I would affirm.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***